1   CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
      Edward D. Chapin, Esq. (SBN: 053287)
2     echapin@cfsblaw.com
      Francis A. Bottini, Esq. (SBN: 175783)
3     fbottini@cfsblaw.com
      Jill M. Sullivan, Esq. (SBN: 185757)
4     jsullivan@cfsblaw.com
      Keith M. Cochran, Esq. (SBN: 254346)
5     kcochran@cfsblaw.com
6   550 West "C" Street, Suite 2000
    San Diego, California 92101
7   Tel: (619) 241-4810
    Fax: (619) 955-5318
8

9   Attorneys for Plaintiff and the Classes

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    OAKLAND DIVISION

14  DOUGLAS J. CAMPION, on behalf of himself    CASE NO. **C12-00443**
    and all others similarly situated,
15
                Plaintiff                        CLASS ACTION COMPLAINT FOR:
16
                                                 (1) VIOLATION OF THE REAL ESTATE
17              v.                                    SETTLEMENT PROCEDURES ACT, 12
                                                     U.S.C. § 2601 et seq. ("RESPA")
18  OLD REPUBLIC INTERNATIONAL
    CORPORATION, a Delaware corporation,         (2) VIOLATION OF BUS. & PROF. CODE
19  OLD REPUBLIC HOME PROTECTION                      § 17200;
    COMPANY, INC., a California corporation,
20  OLD REPUBLIC NATIONAL TITLE                   (3) DECLARATORY JUDGMENT UNDER
    INSURANCE COMPANY, a Minnesota                   28 U.S.C. § 2201(a);
21  corporation, MISSISSIPPI VALLEY TITLE
    INSURANCE COMPANY, a Mississippi             (4) INJUNCTIVE RELIEF
22  corporation, AMERICAN GUARANTY
    TITLE INSURANCE COMPANY, an                  **JURY TRIAL DEMANDED**
23  Oklahoma corporation, and REPUBLIC
    MORTGAGE INSURANCE COMPANY, a
24  North Carolina corporation,

25              Defendants
26

27

28

                              -1-
                      CLASS ACTION COMPLAINT

1

## NATURE OF THE ACTION

2      1.      This is a class action lawsuit against Defendant Old Republic International

3   Corporation ("Old Republic") and some of its subsidiaries. During the Class Periods alleged herein,

4   Defendants violated federal and state law by paying commissions and kickbacks to real estate agents

5   in exchange for the agents' referral of real estate settlement services provided by Old Republic's

6   subsidiaries.

7      2.      Defendants have engaged in the illegal kickback scheme, during which time they

8   have actively concealed the kickbacks from consumers and federal and state regulators.

9      3.      During the Class Periods, Defendant Old Republic entered into service provider

10  agreements with real estate brokers and agents. As part of the agreements, Defendant Old Republic

11  and/or its subsidiaries paid the real estate agents and brokers a fee for each referral of the real estate

12  settlement service provided. These payments were not in exchange for settlement services actually

13  provided and were not nominal payments.

14     4.      In the case of kickbacks in exchange for the referral of home protection contracts,[1] for

15  example, the payments averaged approximately one-fifth the premium for such policies.

16     5.      This class action lawsuit is brought on behalf of two classes.[2] The first class is

17  brought on behalf of a nationwide plaintiff class (the " RESPA Class") consisting of all persons and

18  entities in the United States who received any real estate settlement service (including, but not

19  limited to, home protection contracts, title services, and escrow services) from Defendant Old

20  Republic or any of its subsidiaries in connection with the purchase or sale of a home financed by a

21  federally related mortgage from January 27, 2002 to the present (the "RESPA Class Period"), where

22

23  [1] "Home protection contracts" are also known as "home warranty plans" and are sometimes referred to such herein.

24

25  [2] This writing/publication is a creative work fully protected by all applicable copyright laws, as well as by misappropriation, trade secret, unfair competition and other applicable laws. The authors of this work have added value to the underlying factual materials herein through one or more of the

26  following: unique and original selection, coordination, expression, arrangement, and classification of

27  the information work. No copyright is claimed in the text of statutes, regulations, and any excerpts from reports quoted within this complaint. Copyright © 2012 by Francis A. Bottini, Jr. and Chapin

28  Fitzgerald Sullivan & Bottini LLP.

1   any portion of the fees or premiums for such settlement services was paid to any person pursuant to

2   an agreement or understanding that such payment was in exchange for the referral of the settlement

3   service. Excluded from the RESPA Class are Defendants, their parents, subsidiaries, and affiliates,

4   all officers, directors, employees, and agents of the Defendants and their parents, subsidiaries and

5   affiliates, any real estate agent or broker involved in any of the transactions at issue in this

6   complaint, any agent or employee of any federal or state government acting in their official capacity,

7   and co-conspirators.

8       6.      The second class consists of a plaintiff class (the "California UCL Class") consisting

9   of all persons and entities who, while residing in California, purchased, received, or acquired a home

10   protection contract issued by Defendant Old Republic Home Protection Company, Inc. ("ORHPC")

11   from May 22, 2005 to the present (the "California UCL Class Period").

12       7.      As discussed below, Defendants have violated California Insurance Code Section

13   12760 by paying commissions to real estate agents and brokers in connection with the sale or

14   marketing of home protection contracts.

15       8.      As discussed below, Defendants have also violated Section 8(a) of the Real Estate

16   Settlement Procedures Act ("RESPA") by giving or receiving fees in exchange for the referral of any

17   "service involving a federally related mortgage loan to any person."

18                          **JURISDICTION AND VENUE**

19       9.      Jurisdiction in this Court exists pursuant to the Class Action Fairness Act of 2005, 28

20   U.S.C. §§ 1332(d), 1453. Minimal diversity exists because Plaintiff is a California resident and

21   citizen and Defendant Old Republic International Corporation is a citizen of Delaware, its state of

22   incorporation. The amount in controversy exceeds $5,000,000 exclusive of interest and costs.

23       10.     Jurisdiction also exists under the Real Estate Settlement Procedures Act, 12 U.S.C. §

24   2601 et seq. ("RESPA"). This case arises in part under the laws of the United States. Accordingly,

25   federal question jurisdiction exists pursuant to 28 U.S.C. §1331.

26       11.     Venue is proper in this Court because one or more of the Defendants are located

27   within this District, Plaintiff is a California citizen, a substantial portion of the transactions and

28   wrongs complained of herein occurred in this District, and Defendants have received substantial

-3-
CLASS ACTION COMPLAINT

1  compensation in this District by doing business here and engaging in numerous activities that had an
2  effect in this District.

3                                        **PARTIES**

4          12.     Plaintiff Douglas J. Campion, a California citizen, purchased, received and/or
5  acquired a home protection contract issued by Defendant ORHPC during the Class Period and in
6  connection with the close of escrow on a residential home at 12439 Floresta Court, San Diego,
7  California 92128 involving a federally related mortgage. The escrow on the transaction closed on or
8  about April 2007. Upon information and belief, a portion of the fees paid for the real estate
9  settlement services provided by Defendants to Plaintiff were paid by Defendants to real estate
10 agents, brokers, lawyers, and other persons as kickbacks for the referral of real estate settlement
11 services. Also, upon information and belief, Defendants and/or their parents and subsidiaries paid
12 real estate agents and/or brokers commissions to persons as an inducement or compensation for the
13 issuance, purchase or acquisition of home protection contracts issued by Defendant ORHPC to
14 Plaintiff.   Upon information and belief, the price Defendant ORHPC charged for the home
15 protection contract received by Plaintiff was inflated due to the commissions, fees or kickbacks paid
16 by Defendants.

17         13.     Defendant ORHPC is a California corporation with its principal place of business at
18 Two Annabel Lane, San Ramon, California 94583. ORHPC's main service center is also located in
19 San Ramon, where it offers client services including both application and claims processing. During
20 the time period covered in this Complaint, ORHPC was authorized to sell home warranty plans in 45
21 states (except Alaska, Massachusetts, Montana, New Hampshire, and North Dakota) and the District
22 of Columbia. ORHPC sells more than $100 million worth of home warranty plans each year and
23 sells more home warranty plans in California than in any other state. For example, in 2008, 26.2%
24 ($28,352,100) of ORHPC's business was written California, 17.8% ($19,346,964) in Texas and
25 10.1% ($10,992,936) in Arizona. All ORHPC's contracts were drafted at ORHPC's headquarters in
26 California. ORHPC is part of a larger group of companies ultimately controlled by Defendant Old
27 Republic.

28

                                             -4-

1      14.    Defendant Old Republic International Corporation is a Delaware corporation with its

2 principal place of business located at 307 North Michigan Avenue, Chicago, Illinois 60601.

3 Defendant Old Republic is an insurance holding company with no operations of its own. Its

4 principal assets consist of the business conducted by its insurance subsidiaries.

5      15.    Defendant Old Republic National Title Insurance Company is a Minnesota

6 corporation with its principal place of business located at 400 Second Avenue South, Minneapolis,

7 Minnesota, 55401. It is a subsidiary of Defendant Old Republic, providing title insurance policies

8 and other real estate settlement services. Its agent for service of process is Lisa G. Garcia at 275

9 Battery Street, Suite 1500, San Francisco, California 94111.

10     16.    Defendant Mississippi Valley Title Insurance Company is a Mississippi corporation

11 with its principal place of business located at 124 One Madison Plaza, Suite 2100, Madison,

12 Mississippi 39110. It is a subsidiary of Defendant Old Republic, providing title insurance policies

13 and other real estate settlement services. Its registered agent for service of process is Mark B.

14 Higdon at 124 One Madison Plaza, Suite 2100, P.O. Box 2901, Madison, MS 39130.

15     17.    Defendant American Guaranty Title Insurance Company is an Oklahoma corporation

16 with its principal place of business located at 4040 North Tulsa, Oklahoma City, Oklahoma 73112.

17 It is a subsidiary of Defendant Old Republic, providing title insurance policies and other real estate

18 settlement services. Its registered agent for service of process is Jeffrey B. Noble at 4040 North

19 Tulsa, Oklahoma City, Oklahoma 73112.

20     18.    Defendant Republic Mortgage Insurance Company is a North Carolina corporation

21 with its principal place of business located at 101 North Cherry Street, Winston-Salem, North

22 Carolina 27101. It is a subsidiary of Defendant Old Republic and provides mortgage insurance

23 services. Its registered agent for service of process is John Petrasich at 2030 Main Street, Suite

24 1200, Irvine, California 92614.

25     **CLASS ACTION ALLEGATIONS**

26     19.    Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of a

27 nationwide plaintiff class (the "RESPA Class") consisting of:

28

-5-
CLASS ACTION COMPLAINT

1    All persons and entities in the United States who received any real
     estate settlement service (including, but not limited to, home
2    protection contracts, title services, and escrow services) from any
     of the Defendants named herein in connection with the purchase or
3    sale of a home financed by a federally related mortgage during the
     period January 27, 2002 to the present (the "RESPA Class
4    Period"), where any portion of the fees or premiums for such
     settlement services was paid to any person pursuant to an
5    agreement or understanding that such payment was in exchange for
     the referral of the settlement service. Excluded from the RESPA
6    Class are Defendants, their parents, subsidiaries, and affiliates, all
     officers, directors, employees, and agents of the Defendants and
7    their parents, subsidiaries and affiliates, any real estate agent or
     broker involved in any of the transactions at issue in this
8    complaint, any agent or employee of any federal or state
     government acting in their official capacity, and co-conspirators.

9

10   20.    Plaintiff brings this action both on behalf of himself, and as a class action under

11   Federal Rule of Civil Procedure 23 on behalf of the following additional class (the "California UCL

12   Class"):

13   All persons and entities who, during the period from May 22, 2005
     through the present (the "California UCL Class Period"),
14   purchased, received, or acquired a home protection contract issued
     by Defendant Old Republic Home Protection Company, Inc while
15   they resided in California. Excluded from the California UCL
     Class are Defendants, their parents, subsidiaries, and affiliates, all
16   officers, directors, employees, and agents of the Defendants and
     their parents, subsidiaries and affiliates, any real estate agent or
17   broker involved in any of the transactions at issue in this
     complaint, any agent or employee of any federal or state
18   government acting in their official capacity, and co-conspirators.

19   21.    Plaintiff does not know the exact number of RESPA Class and California UCL Class

20   members because such information is in the exclusive control of Defendants. Upon information and

21   belief, Plaintiff believes that there are hundreds of thousands of RESPA Class and California UCL

22   Class members, geographically dispersed throughout the United States, such that joinder of all class

23   members is impracticable.

24   22.    Plaintiff's claims are typical of the claims of the RESPA Class and California UCL

25   Class in that: Plaintiff purchased, received or acquired a home protection contract issued by

26   Defendant ORHPC during the RESPA Class Period and California UCL Class Period; during the

27   RESPA Class and California UCL Class Periods, Defendants violated California Insurance Code

28   Section 12760 by paying commissions to persons as inducements or compensation for the issuance,

-6-
CLASS ACTION COMPLAINT

1  purchase, or acquisition of home protection contracts and/or violated Section 8(a) of RESPA by

2  paying kickbacks to persons pursuant to agreements and/or understandings relating to the referral of

3  real estate settlement services; Plaintiff and all RESPA Class and California UCL Class members

4  were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged

5  herein; and the relief sought is common to the RESPA Class and California UCL Class.

6       23.    Numerous questions of law or fact arise from Defendants' unfair and anticompetitive

7  conduct that is common to the RESPA Class and California UCL Class. Among the questions of

8  law or fact common to the RESPA Class and California UCL Class are:

9            (a)    whether Plaintiff and the California UCL Class members purchased or

10  acquired home protection contracts issued by Defendant ORHPC during the California UCL Class

11  Period;

12           (b)    whether during the RESPA Class Period Defendants paid a portion of the fees,

13  premiums, and monies received for providing real estate settlement services to real estate brokers,

14  agents, and other persons pursuant to agreements and/or understandings concerning the referral of

15  real estate settlement services;

16           (c)    whether Defendant ORHPC issued and/or sold home protection contracts to

17  Plaintiff and the California UCL Class during the California UCL Class Period;

18           (d)    whether Defendants engaged in unfair and/or unlawful business practices

19  during the RESPA Class Period and the California UCL Class Period;

20           (e)    whether Defendants violated California Insurance Code Section 12760 by

21  paying commissions to persons as inducements or compensation for the issuance, purchase, or

22  acquisition of home protection contracts during the California UCL Class Period;

23           (f)    whether Defendants violated Section 8(a) of RESPA and/or Section 8(b) of

24  RESPA during the RESPA Class Period;

25           (g)    whether Plaintiff and the California UCL Class members are entitled to

26  restitution, and if so the measure of such restitution;

27           (h)    whether Plaintiff and the RESPA Class have been damaged, and if so the

28  appropriate measure of such damages; and

-7-

1    (i)    whether class-wide declaratory and/or injunctive relief is appropriate and, if

2    so, the proper measure of the declaratory and/or injunctive relief.

3    24.    These questions of law or fact are common to the RESPA Class and California UCL

4    Class and predominate over any other questions affecting only individual class members.

5    25.    Plaintiff will fairly and adequately represent the interests of the RESPA Class and

6    California UCL Class in that:  Plaintiff purchased, received and/or acquired a home protection

7    contract from Defendant ORHPC during the RESPA Class Period and California UCL Class Period

8    as part of the purchase or sale of a home financed by a federally related mortgage; Plaintiff suffered

9    damages and/or is entitled to restitution; and Plaintiff has no conflicts with any other member of the

10   RESPA Class or California UCL Class.  Furthermore, Plaintiff has retained competent counsel

11   experienced in class-action litigation.

12   26.    A class action is superior to the alternatives, if any, for the fair and efficient

13   adjudication of this controversy.

14   27.    Prosecution of separate actions by individual class members would create the risk of

15   inconsistent or varying adjudications, establishing incompatible standards of conduct for the

16   Defendants.

17   28.    Injunctive relief is appropriate as to the RESPA Class and California UCL Class as a

18   whole because Defendants have acted or refused to act on grounds generally applicable to the

19   RESPA Class and California UCL Class.

20   29.    Plaintiff reserves the right to expand, modify, or alter the class definitions in response

21   to information learned during discovery.

22

23

24                                **STATEMENT OF FACTS**

25   **BACKGROUND FACTS**

26   30.    Defendant Old Republic is a Chicago-based holding company engaged in the single

27   business of insurance underwriting.  It conducts its operations through a number of regulated

28

                                          -8-

1   insurance company subsidiaries organized into three major segments: General, Mortgage Guaranty,
2   and Title Insurance Groups.

3       31.    Defendant Old Republic's title insurance business was founded in Minnesota in 1907
4   and consists primarily of the issuance of policies to real estate purchasers and investors based upon
5   searches of the public records, which contain information concerning interests in real property. The
6   policy insures against losses arising out of defects, liens and encumbrances affecting the insured title
7   and not excluded or excepted from the coverage of the policy. Defendant Old Republic's title
8   insurance business is operated through a national network that consists of Defendant Old Republic
9   National Title Insurance Company, Defendant Mississippi Valley Title Insurance Company, and
10  Defendant American Guaranty Title Insurance Company. During the Class Periods, Old Republic
11  directly made payments and/or caused its subsidiaries to make payments to real estate agents and
12  brokers in exchange for the referral of real estate settlement services involving federally related
13  mortgages.

14      32.    ORHPC was founded in California in 1974 as Dependable Home Warranty.
15  Defendant ORHPC was established as a subsidiary of Defendant Old Republic in 1982. Defendant
16  ORHPC began expanding beyond California in 1995 and is now the third largest home warranty
17  company nationwide.

18      33.    ORHPC sells home protection contracts to homeowners that obligate it to repair or
19  replace covered systems and appliances that become inoperable due to normal wear and tear during
20  the term of a contract.

21      34.    Defendant ORHPC is wholly-owned by Old Republic General Insurance Group, Inc.
22  and is part of a larger group of companies ultimately controlled by Defendant Old Republic.
23  According to the Report of Examination of ORHPC by the California Department of Insurance as of
24  December 31, 2008, each year ORHPC pays large cash dividends to its parent companies. For the
25  years 2005-2008, for example, ORHPC paid a $6,000,000 dividend each year to its parent
26  companies.

27      35.    The Report of Examination dated December 31, 2008 also indicates that ORHPC
28  only writes home protection contracts and is authorized in forty-five states (except Alaska,

-9-
CLASS ACTION COMPLAINT

1  Massachusetts, Montana, New Hampshire, and North Dakota) and the District of Columbia. Direct
2  contract fees written in 2008 were $108,810,938. Of this amount, 26.2% ($28,352,100) of the
3  business was written in California, 17.8% ($19,346,964) in Texas and 10.1% ($10,992,936) in
4  Arizona.

5      36.    According to the December 31, 2008 Report of Examination of ORHPC by the
6  California Department of Insurance, ORHPC's sale of home protection contracts "is written through
7  a sales force of 89 sales representatives *who market the contracts to real estate professionals*."

8                                **RESPA ALLEGATIONS**

9      37.    Congress enacted RESPA to shield home buyers "from unnecessarily high settlement
10  charges by certain abusive practices." 12 U.S.C. § 2601(a). 12 U.S.C. § 2607(a) provides, "No
11  person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any
12  agreement or understanding, oral or otherwise, that business incident to or a part of a real estate
13  settlement service involving a federally related mortgage loan shall be referred to any person."

14      38.    During the RESPA Class Period, Defendants and their subsidiary and parent
15  companies marketed and sold real estate settlement services, including but not limited to home
16  protection contracts, escrow services, title policies and services, mortgage insurance, and other
17  products and services throughout the United States using real estate brokers, agents, and lawyers.
18  The real estate settlement services were sold during the RESPA Class Period to consumers as part of
19  escrows involving the purchase and sale of residential homes involving federally insured mortgage
20  loans. Defendants incentivized the real estate brokers, agents, and lawyers to sell their home
21  protection contracts, title policies, escrow services and other real estate settlement services by paying
22  such persons a fee, kickback or commission in exchange for the referral of the real estate settlement
23  service.

24      39.    For example, for the years 2007, 2008, and 2009, Defendant ORHPC paid a fee,
25  kickback, or commission on over 190,000 occasions. And these fees, kickbacks, or commissions
26  were paid to over 28,000 offices, agents, brokers, escrow offices and lawyers.

27      40.    The fees, kickbacks, or commissions paid by Defendants to the real estate agents,
28  brokers, and lawyers were directly tied to the number of home protection contracts, title policies,

                                    -10-

escrow services, mortgage insurance policies, and other real estate settlement services sold through escrow. Due to Defendants' payment of the fees, kickbacks, or commissions paid by Defendants, the prices of the real estate settlement services provided by Defendants to Plaintiff and the RESPA Class and California UCL Class during the RESPA Class Period and California UCL Class Period were inflated, and were higher than they would have been if the kickbacks or commissions had not been paid.

41.     The real estate agents, brokers, and lawyers did not provide any real estate settlement services, or if any services were provided they were not actual, necessary and distinct from the primary services provided by the real estate broker, agent, or lawyer, were not nominal, and were duplicative of other fees charged.

42.     Specifically, during the RESPA Class Period and California UCL Class Period, Defendant Old Republic entered into service provider agreements with real estate brokers, agents, and lawyers. As part of the agreements, Defendant Old Republic and/or its subsidiaries, including Defendants, paid the real estate agents, brokers, and lawyers a fee for each referral of the real estate settlement service provided. These payments were not in exchange for settlement services actually provided and were not nominal payments. In the case of kickbacks in exchange for the referral of home protection contracts, for example, the payments averaged approximately one-fifth the premium for such policies.

43.     In meetings with the United States Department of Housing and Urban Development ("HUD") during the RESPA Class Period, the National Home Service Contract Association (NHSCA"), of which Defendant ORHPC is a member, admitted that home warranty companies such as ORHPC were paying kickbacks to real estate agents for the referral of home protection contracts to customers. For example, at one such meeting in Washington, D.C., on October 11, 2007, the NHSCA told HUD that:

> "Home service contract providers currently pay the real estate broker a fee to present, complete, and submit home service contracts to them ... Fees appear to currently range from $60 to about $120 a contract whether paid transactionally or in a fixed fee marketing arrangement."

-11-

1       44.    This meeting between the NHSCA and HUD was not open to the public and neither

2   Plaintiff nor the public learned of the meeting at the time nor could have discovered the meeting or

3   the existence of the kickbacks through reasonable diligence. Indeed, Defendants took concerted and

4   active steps to conceal from the public the kickbacks and related business arrangements.

5       45.    With respect to the kickbacks paid to real estate agents by Defendants for the referral

6   of home protection contracts to consumers, recent rulings by HUD make it clear that Defendants'

7   business arrangements with real estate agents violate RESPA. Since 1992, the RESPA regulations

8   promulgated by HUD have expressly included services relating to home protection contracts as

9   "settlement services." *See* 24 C.F.R. §3500.2.

10       46.    HUD has also issued an advisory opinion letter (the "Advisory Opinion") on February

11   21, 2008 holding that a transaction in which a real estate broker or agent receives a fee only when a

12   consumer purchases or receives a home warranty contract is likely a violation of Section 8 of

13   RESPA. HUD's letter finds that RESPA is likely violated when home warranty companies such as

14   Defendant ORHPC enter into either of the following two types of arrangements:

15       (a)    Marketing Agreement. A "Marketing Agreement" is an agreement pursuant

16   to which a home warranty company such as Defendant ORHPC enters into an arrangement with a

17   real estate agent or broker pursuant to which the broker or agent agrees to provide numerous, varied,

18   and sundry marketing-related services to promote the sale of the home warranty company's home

19   warranty contracts. The real estate agent or broker is only compensated when a consumer purchases

20   a home warranty contract.

21       (b)    Administrative Services Agreement. An "Administrative Services

22   Agreement" is an agreement between a real estate agent or real estate broker and a home warranty

23   company. Under this agreement the real estate agent/broker agrees to perform numerous, varied,

24   and sundry administrative-related services to promote the home warranty company's product. As

25   under a "Marketing Agreement," the real estate agent/broker is compensated only when the

26   consumer purchases a home warranty contract.

27       47.    HUD further noted that Section 8(c) of RESPA provides an exception to this

28   prohibition on fees and kickbacks for bona fide compensation for "goods or facilities actually

-12-

1 furnished for services actually performed." HUD stated that this exception would not apply in a
2 situation where the real estate agent was only compensated if the home warranty contract was
3 actually purchased. "Because the payments are based on the number of successful transactions, they
4 appear to be payments made pursuant to an agreement or understanding to refer business to the
5 [home warranty company, and not payments for services actually performed." Further,
6 characterizing "such arrangements as 'marketing' or 'administrative' agreements does not render the
7 underlying conduct legal." These kinds of payments made by home warranty providers to real estate
8 agents are "only a means to facilitate payments for referrals by persons in a position to refer
9 settlement service business, in violation of RESPA."

10    48.    After HUD issued its February 21, 2008 Advisory Opinion, home warranty
11 companies and the National Association of Realtors ("NAR"), urgently petitioned HUD to retract the
12 Advisory Opinion. The NAR is a national membership group for realtors and spends significant
13 sums of money lobbying Congress and governmental agencies on issues relevant to realtors. To
14 assist it in their lobbying efforts, the NAR used Phillip L. Schulman at K&L Gates.

15    49.    These lobbying efforts culminated in a meeting on Thursday, April 3, 2008 between,
16 among others, the NAR and executives at HUD, including Ivy Jackson, Director of HUD's Office of
17 RESPA and Interstate Land Sales, and Deputy Assistant Secretary Cunningham. During the
18 meeting, NAR sought a retraction of the Advisory Opinion. As a backup, given the fact that
19 Defendants were paying the real estate agents, brokers, and lawyers kickbacks pursuant to the
20 marketing and administrative services agreements, the NAR asked HUD to discard the bright line
21 rule articulated in the Advisory Opinion and instead adopt a "case by case" approach to determining
22 whether Defendants' marketing and administrative services agreements with real estate agents
23 violate RESPA. After the meeting, Joseph Ventrone, Vice President of the NAR, was tasked with
24 sending a follow up letter to Ms. Jackson on behalf of the NAR and the other participants in the
25 April 3, 2008 meeting. In a May 21, 2008 letter to Ms. Jackson, Mr. Ventrone of the NAR stated:

26        "NAR respectfully requests that HUD retract the Advisory Opinion
          pending its further consideration of this matter. At a minimum, we would
27        ask that HUD publish clarification expressly stating that marketing and
          administrative services agreements between a real estate broker or agent
28        and a HWC [home warranty company] require case-by-case analysis and

                                                -13-

1

2

3

4

> will comply with RESPA so long as the broker or agent performs services that are actual, necessary and distinct from the broker's or agent's primary real estate duties and the HWC pays the broker or agent no more than fair market value compensation in return for the services performed. We ask that such a retraction be done immediately, so that HUD may alert the settlement services industry that providers should not rely on the February 21st Advisory Opinion."

5

6

7

8

50. Thus, knowing that Defendants' conduct had been determined to violate RESPA, the NAR asked HUD to vacate its Advisory Opinion so that Defendants could continue their violations of RESPA. HUD declined this request, refused to vacate its Advisory Opinion, and refused to modify the Advisory Opinion in any manner whatsoever.

9

10

11

12

13

14

15

51. In the May 21, 2008 letter from the NAR to HUD, the NAR acknowledged that the Advisory Opinion "suggests that there are no services whatsoever that a real estate broker or agent could perform for a HWC that would be compensable under Section 8 of RESPA, and it proclaims that both marketing and administrative services agreements between real estate brokers/agents and HWCs likely would violate the Act." The letter further acknowledged that "the Department's conclusions in the Advisory Opinion, however, are tantamount to an outright ban on marketing and administrative services agreements between real estate brokers/agents and HWCs."

16

17

18

19

20

21

52. The letter admitted that there were agreements pursuant to which Defendant ORHPC and other home warranty companies were paying kickbacks to real estate agents, but argued that real estate agents were providing services separate from the referral of real estate settlement services and that the "brokers and agents are entitled to be compensated the reasonable value for their services." The letter also admitted that home warranty companies were paying real estate agents "*a flat fee per home warranty application submitted to the HWC.*"

22

23

24

25

26

27

53. While the NAR advocated in the letter for the position that real estate agents were providing services separate and apart from the mere referral of real estate settlement services to corporations such as Defendants, the NAR acknowledged that the Advisory Opinion "*suggests that real estate brokers/agents would have difficulty ever showing that the services performed under such agreements merit compensation and that transaction-based compensation essentially renders their compensation a sham.*"

28

-14-

1    54.    Nevertheless, Defendants continued their practice of paying illegal kickbacks to real

2  estate agents, brokers, and lawyers, despite the February 21, 2008 Advisory Opinion and despite the

3  overwhelming failure of Defendants' concerted and substantial lobbying efforts. Defendants also

4  continued to conceal the payments.

5    55.    Then on June 25, 2010, HUD issued an Interpretative Rule entitled "Real Estate

6  Settlement Procedures Act (RESPA): Home Warranty Companies' Payments to Real Estate Brokers

7  and Agents." *See* 75 Fed. Register 122 (June 25, 2010), pp. 36271-36273 (attached hereto as

8  **Exhibit 1**). HUD issued the Interpretative Rule in response to inquiries it received in response to its

9  February 21, 2008 letter. In the Interpretative Rule, HUD stated:

10           "In some circumstances, marketing services performed on behalf of an
             HWC are not compensable services. In particular, a real estate broker or
11           agent is in a unique position to refer settlement service business and
             through marketing can affirmatively influence a homebuyer's or seller's
12           selection of an HWC. As a real estate broker and agent hold positions of
             influence in the real estate transaction, a homebuyer or seller is more
13           likely to accept the broker's or agent's promotion or recommendation of a
             settlement service provider. Therefore, *marketing performed by a real*
14           *estate broker or agent on behalf of an HWC to sell a homeowner*
             *warranty to particular homebuyers or sellers is a "referral" to a*
15           *settlement service provider.*"

16           *Accordingly, in a transaction involving a federally related mortgage*
             *loan, an HWC's compensation of a real estate broker or agent for*
17           *marketing services that are directed to particular homebuyers or sellers*
             *would be a payment that violates section 8 of RESPA as an illegal*
18           *kickback for a referral of settlement service business.* For example, a real
             estate broker or agent actively promoting an HWC and its products to
19           sellers or prospective homebuyers by providing HWC verbal "sales
             pitches" about the benefits of a particular HWC product or by distributing
20           the HWC's promotional material at the broker's or agent's office or at an
             open house is considered to be a referral. Thus, compensating the real
21           estate broker or agent for such promotion would result in a violation of
             section 8 of RESPA.
22

23

24  *See* 75 Fed. Register 122 (June 25, 2010), at p. 36272.

25    56.    HUD invited public comments to its June 25, 2010 Interpretative Rule. In response to

26  the comments received, HUD issued a Response to Public Comments (the "Response") on

27  November 23, 2010 (attached hereto as **Exhibit 2**). Although it received some negative comments,

28  it did not change any part of the June 25, 2010 Interpretative Rule. In the Response, HUD again

-15-
CLASS ACTION COMPLAINT

1 | reiterated that a home protection/warranty company's payment of a flat fee to real estate agents for

2 | marketing services violates Section 8 of RESPA as an illegal kickback for the referral of a settlement

3 | service, regardless of whether the payment is made to the broker or agent on a "flat fee" or "per

4 | transaction" basis.

**ALLEGATIONS REGARDING DEFENDANTS' VIOLATION OF CALIFORNIA INSURANCE CODE SECTION 12760**

7 |     57.    During the California UCL Class Period, Defendant ORHPC was a "home protection

8 | company" as defined by Cal. Ins. Code Section 12740(b). Defendant ORHPC further sold, during

9 | the California UCL Class Period, "home protection contracts," which are defined as "a contract or

10 | agreement whereby a person, other than a builder, seller, or lessor of the home which is the subject

11 | of the contract, undertakes for a specified period of time, for a predetermined fee, to repair or replace

12 | all or any part of any component, system or appliance of a home necessitated by wear and tear,

13 | deterioration or inherent defect, arising during the effective period of the contract, and, in the event

14 | of an inspection conducted pursuant to subdivision (b) of Section 12761, by the failure of that

15 | inspection to detect the likelihood of any such loss." Cal. Ins. Code Section 12740(a).

16 |     58.    During the California UCL Class Period, Defendants and/or their parents and

17 | subsidiaries paid real estate agents, brokers, and lawyers commissions as an inducement or

18 | compensation for the issuance, purchase or acquisition of home protection contracts issued by

19 | Defendant ORHPC. Defendant ORHPC is a California corporation. During the California UCL

20 | Class Period, it was headquartered, and remains headquartered, in San Ramon, California. While

21 | ORHPC sold home warranty contracts in California and nationwide during the California UCL Class

22 | Period, all its home warranty plans were drafted at its headquarters in San Ramon, California.

23 | Moreover, all such contracts were entered into by ORHPC from its headquarters in San Ramon,

24 | California and all such contracts listed a Post Office Box in San Ramon, California as ORHPC's

25 | address for purposes of the contract.

26 |     59.    Moreover, all ORHPC agreements with real estate agents, brokers and lawyers,

27 | pursuant to which ORHPC and/or Old Republic agreed to pay fees and commissions to real estate

28 | agents, brokers, and lawyers as inducements and compensation for the issuance, purchase, or

-16-

1    acquisition of ORHPC home warranty plans, were negotiated by ORHPC from its headquarters in

2    San Ramon, California.

3        60.    California Insurance Code Section 12760 provides:

4            "No home protection company shall pay a commission to any person as an
             inducement or compensation for the issuance, purchase or acquisition of a
5            home protection contract, nor shall a home protection company or any
             other insurer either directly or indirectly, as a part of any real property
6            transaction in which a home protection contract will be issued, purchased
             or acquired, require that a home protection contract be issued, purchased
7            or acquired in conjunction with or as a condition precedent to the issuance,
             purchase or acquisition, by any person, of any other policy of insurance.
8            The provisions of this section shall not prohibit payment of an override
             commission or marketing fee to an employee or commission sales agent
9            who is the marketing representative of the home protection company or its
             parent, subsidiary, or affiliate on the sale or marketing of a home
10           protection contract, provided such person is not a real estate licensee
             sharing in or entitled to share in, or affiliated with a real estate brokerage
11           firm which is entitled to share in the real estate commission generated by
12           the underlying real property transaction."

13       61.    During the California UCL Class Period, Defendants also either directly or
14   indirectly, as a part of real property transactions in which home protection contracts were issued,
15   purchased or acquired, required that ORHPC's home protection contracts be issued, purchased or
16   acquired in conjunction with or as a condition precedent to the issuance, purchase or acquisition, by
17   persons of other policies of insurance.
18
19       62.    Because of Defendants' payments of such commissions, the prices of ORHPC's home
20   protection contracts were inflated during the California UCL Class Period, and were higher than they
21   would have been absent payment of the commissions. As a result, Plaintiff and the California UCL
     Class suffered harm.
22
23       63.    During the California UCL Class Period, Defendants entered into service provider
24   agreements with real estate brokers, agents, and lawyers. As part of the agreements, Defendants
25   and/or their parents and subsidiaries paid the real estate agents, brokers, and lawyers a fee for each
26   referral of home protection contracts. The kickbacks in exchange for the referral of home protection
27   contracts were not nominal, and averaged approximately one-fifth the premium for such policies.

28

                                          -17-

1    64.    As noted *supra*, after HUD issued the February 21, 2008 Advisory Opinion, the

2  NAR, in combination with home warranty companies, sent a letter to HUD dated May 21, 2008

3  which frankly admitted the agreements pursuant to which home warranty companies such as

4  Defendants ORHPC were paying kickbacks to real estate agents. The letter also frankly admitted

5  that home warranty companies were paying real estate agents "*a flat fee per home warranty*

6  *application submitted to the HWC*."

7    65.    While the NAR advocated in the letter for the position that real estate agents were

8  providing services separate and apart from the mere referral of real estate settlement services to

9  corporations such as Defendants, the NAR acknowledged that the Advisory Opinion "*suggests that*

10 *real estate brokers/agents would have difficulty ever showing that the services performed under*

11 *such agreements merit compensation and that transaction-based compensation essentially renders*

12 *their compensation a sham.*"

13    66.    Whether the real estate agents, brokers, and lawyers were providing any services

14 whatsoever in exchange for the admitted payments is completely irrelevant to Defendant ORHPC's

15 violation of Cal. Ins. Code Section 12760 since the statute is an absolute prohibition of payments to

16 any person by home protection companies such as ORHPC. Defendants wholeheartedly admitted

17 that the whole purpose of the payments was to influence real estate agents to promote their home

18 protection contracts. The May 21, 2008 letter to HUD from the NAR plainly stated that home

19 warranty companies such as ORHPC were paying real estate agents for "*[t]he work required to*

20 *market and sell a home warranty*." The letter not only admitted the practice, but also boldly stated

21 that "real estate brokers/agents are entitled to reasonable compensation for marketing and

22 administering [home warranties] on HWC's [home warranty companies'] behalf." There could be

23 no more clear-cut and unambiguous violation of Cal. Ins. Code Section 12760.

24    67.    Despite the February 21, 2008 Advisory Opinion and despite the overwhelming

25 failure of Defendants' concerted and substantial lobbying efforts, Defendant ORHPC, individually

26 and/or in concert with Defendant Old Republic, continued its practice of paying commissions and

27 fees to real estate agents, brokers, and lawyers as an inducement or compensation for the issuance,

28

-18-

1    purchase or acquisition of home protection contracts issued by Defendant ORHPC. They also

2    continued to conceal the payments from Plaintiff and the California UCL Class.

3        68.    After HUD issued its June 25, 2010 interpretative rule, Defendant ORHPC issued a

4    statement on its website to real estate professionals:

5            On June 25, 2010, HUD issued a new interpretive rule regarding
            administrative fee payments to Real Estate Brokers and Agents.

6
            HUD's new interpretive rule clarifies that real estate brokers and agents
7            may not be compensated by Home Warranty Companies for marketing
            services directed to particular homebuyers or sellers.

8
            As such, we will be offering only those home warranty products that are
9            compliant with HUD's ruling. Any overpayments of Plan fees received
            will be refunded to the closing company for appropriate distribution.

10
            We value the efforts of the real estate community in making our products
11            available and trust that you and your clients will continue to take
            advantage of the coverage, budget protection, superior service and peace
12            of mind that our Home Warranties provide.

13            Old Republic Home Protection is the only company that has continuously
            offered a Non-Administrative Fee Product in most markets, allowing the
14            real estate community to offer comprehensive coverage and the highest
            quality service at the lowest rates in the Industry! And this Home
15            Warranty Product, now available in all markets, is more important than
            ever for your own peace of mind, providing protection from potential
16            concerns regarding this new ruling.

17            Feel free to view our available Home Warranty Products and receive Free
            Home Warranty Plan Quotes. You can also Place an Application Online
18            through our Toolbox which provides the most competitively priced
            products in the market today.

19
            Old Republic Home Protection leads the way in being "People Helping
20            People", and this is just one more indication of our commitment to you
            and the real estate community we serve.

21
            We thank you for your continued support and future business.

22

23

24

25                          **EQUITABLE TOLLING**

26
        69.    During the RESPA Class Period and California UCL Class Period, Plaintiff did not
27
28    discover and could not have discovered through the exercise of due diligence Defendants' violations

                                    -19-

1  of RESPA and California law because Defendants did not disclose, and actively concealed, their

2  unlawful payments of referral fees and commissions to the real estate agents, brokers, and lawyers.

3  Plaintiff was unaware of and had no knowledge of Defendants' business arrangements and

4  agreements among and between themselves and/or the real estate agents, brokers, and lawyers.

5      70.    Plaintiff could not have discovered Defendants' violations of law prior to filing suit

6  because Defendants made absolutely no disclosure of the kickbacks to the real estate agents, brokers,

7  and lawyers in the escrow documents, HUD-1 statements, any other documents. Thus, none of the

8  documents provided to Plaintiff made any disclosure of any payment/kickback to the real estate

9  agents, brokers, or lawyers for the referral of real estate settlement services.

10      71.    Indeed, in the May 21, 2008 letter from the NAR to HUD, the NAR admitted that

11  absolutely no disclosure has ever been made to consumers about the kickbacks and fees paid to real

12  estate agents. The letter stated:

13          "Finally, please note that NAR would support and promote any
requirement that a real estate broker/agent disclose to consumers that the
14          broker/agent is receiving compensation for taking the home warranty
application and performing marketing and other services for the HWC
15          [home warranty company].   While NAR fervently maintains that
marketing and administrative services agreements between HWCs and real
16          estate brokers/agents comply with RESPA, NAR likewise believes in open
and honest communication with consumers and *would endorse full*
17          *disclosure* of the relationships to customers."

18      72.    Despite its protestation that it "would endorse" disclosure of these concealed

19  kickbacks, the NAR and Defendants herein never did disclose the kickbacks. Apparently, the

20  NAR's "spirit of full disclosure" and good faith was conditioned on HUD vacating its Advisory

21  Opinion. Once that did not happen, the NAR and Defendants apparently lost interest in adopting a

22  new policy of "full disclosure" and reverted to the status quo – no disclosure whatsoever.

23  **FIRST CAUSE OF ACTION**

24  **(Violation of Bus. & Prof. Code § 17200 – On Behalf of**

25  **Plaintiff and the California UCL Class Against Defendant ORHPC)**

26      73.    Plaintiff repeats and realleges the allegations contained above, except those pertaining

27  to the "RESPA Allegations" in paragraphs 37 -- 56, as if fully stated herein.

28

1      74.    The Unfair Trade Practices Act defines unfair competition to include any "unfair,"

2  "unlawful," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. Unfair

3  competition also includes "unfair, deceptive, untrue or misleading advertising." *Id.* The Act also

4  provides for injunctive relief and restitution for violations. *Id.* § 17203.

5      75.    This cause of action is brought on behalf of Plaintiff, members of the California UCL

6  Class, and members of the general public pursuant to California Business & Professions Code

7  sections 17200 et seq. Under Business & Professions Code § 17200 et seq., Plaintiff is entitled to

8  enjoin Defendant's wrongful practices and to obtain restitution for the monies paid to Defendant by

9  reason of Defendant's unlawful, unfair, and/or deceptive acts and practices.

10     76.    As a direct and proximate result of the acts and practices alleged above, members of

11  the California UCL Class and the general public have been exposed to Defendant's unfair business

12  practices and have been injured or threatened with injury and harm. This Court is empowered to,

13  and should, order restitution to all persons from whom Defendant may have unfairly and/or

14  unlawfully obtained money and property.

15     77.    Defendant's unlawful, unfair, and fraudulent business acts and practices, as described

16  above, present a continuing threat to members of the California UCL Class and of the general public,

17  in that Defendant is continuing, and will continue, unless enjoined, to commit violations of

18  California Insurance Code Section 12760 and Business & Professions Code § 17200. This Court is

19  empowered to, and should, grant preliminary and permanent injunctive relief against such acts and

20  practices.

21     78.    Defendant's conduct as alleged in this Complaint is "unlawful" in that it violates

22  California Insurance Code §12760.

23     79.    Defendant's conduct as alleged in this complaint is "unfair" in that it constitutes an

24  unfair business practice as defined by the UCL and applicable case law.

25     80.    Defendant's conduct as alleged herein is "fraudulent" in that it is likely to deceive

26  Plaintiff, the California UCL Class, and the public. Because Defendant did not disclose the

27  payments they were making to real estate agents, brokers, and lawyers, Plaintiff and the California

28  UCL Class were not provided with full information about the services being provided by Defendant.

1    81.    As a result of Defendant's unlawful, unfair, and fraudulent business practices,

2  Plaintiff was injured.

3    82.    Plaintiff, on behalf of himself and the California UCL Class, seeks restitution from

4  Defendant ORHPC and declaratory and injunctive relief.

5                          **SECOND CAUSE OF ACTION**

6                **(Violation of Bus. & Prof. Code § 17200 – On Behalf of**

7                **Plaintiff and the RESPA Class Against All Defendants)**

8    83.    Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

9    84.    The Unfair Trade Practices Act defines unfair competition to include any "unfair,"

10  "unlawful," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. Unfair

11  competition also includes "unfair, deceptive, untrue or misleading advertising." *Id.* The Act also

12  provides for injunctive relief and restitution for violations. *Id.* § 17203.

13    85.    This cause of action is brought on behalf of Plaintiff, members of the RESPA Class,

14  and members of the general public pursuant to California Business & Professions Code sections

15  17200 et seq. Under Business & Professions Code § 17200 et seq., Plaintiff is entitled to enjoin

16  Defendants' wrongful practices and to obtain restitution for the monies obtained by Defendants by

17  reason of Defendants' unlawful, unfair, and/or deceptive acts and practices.

18    86.    As a direct and proximate result of the acts and practices alleged above, members of

19  the RESPA Class and the general public have been injured, harmed, and/or threatened with harm.

20  This Court is empowered to, and should, order restitution to all persons from whom Defendants may

21  have unfairly and/or unlawfully obtained money and property.

22    87.    Defendants' unlawful, unfair, and fraudulent business acts and practices, as described

23  above, present a continuing threat to members of the RESPA Class and of the general public, in that

24  Defendants are continuing, and will continue, unless enjoined, to commit violations of RESPA and

25  Business & Professions Code § 17200. This Court is empowered to, and should, grant preliminary

26  and permanent injunctive relief against such acts and practices.

27    88.    Defendants' conduct as alleged in this Complaint is "unlawful" in that it violates

28  RESPA and Cal. Ins. Code Section 12760.

89.     Defendant's conduct as alleged in this complaint is "unfair" in that it constitutes an unfair business practice as defined by the UCL and applicable case law.

90.     As a result of Defendants' unlawful and unfair business practices, Plaintiff was injured.

91.     Plaintiff, on behalf of himself and the RESPA Class, seeks (1) restitution from Defendants; (2) declaratory relief in the form of a declaration and/or declaratory judgment that Defendants' conduct violates RESPA, Cal. Ins. Code Section 12760, and California Bus. & Prof. Code Section 17200 et seq.; and (3) injunctive relief in the form of a preliminary and final injunction barring Defendants from engaging in further violations of the law.

### THIRD CAUSE OF ACTION

### (Violation of RESPA, 12 U.S.C. § 2607– On Behalf of

### Plaintiff and the RESPA Class Against All Defendants)

92.     Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

93.     Defendants violated numerous provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., as well as Regulations for Real Estate Settlement Procedures, known as Regulation X, promulgated by the Department of Housing and Urban Development, 24 C.F.R. §§3500 et seq. Specifically, Defendants systematically and repeatedly violated 12 U.S.C. §2607 and 24 C.F.R. §3500.14.

94.     Defendants violated RESPA and Regulation X by paying real estate agents and other persons kickbacks for the referral of real estate settlement services, as alleged herein, in violation of 12 U.S.C. §2607(a), §2607(b), and 24 C.F.R. §3500.14(b).

95.     Plaintiff seeks an order enjoining Defendants from continuing violations of RESPA. Plaintiff and the RESPA Class also seek treble damages under 12 U.S.C. §2607(d) (5).

### FOURTH CAUSE OF ACTION

### Against All Defendants for a Declaratory Judgment

### under 28 U.S.C. § 2201(a) and An Injunction

96.     Plaintiff incorporates each allegation stated above, as if fully set forth in this count.

1        97.     The Defendants have a duty to comply with RESPA, Cal. Ins. Code Section 12760,

2   and California Bus. & Prof. Code Section 17200 et seq.

3        98.     An actual and substantial controversy exists between Plaintiff and Defendants since

4   Defendants deny that their conduct violates RESPA, Cal. Ins. Code Section 12760, and California

5   Bus. & Prof. Code Section 17200 et seq.

6        99.     The Defendants have violated and continue to violate RESPA, Cal. Ins. Code Section

7   12760, and California Bus. & Prof. Code Section 17200 et seq. by the conduct alleged herein.

8        100.    As a direct and proximate result of the Defendants' violation of RESPA, Cal. Ins.

9   Code Section 12760, and California Bus. & Prof. Code Section 17200 et seq., Plaintiff has been

10   injured. Moreover, the general public is threatened with harm.

11       101.    Plaintiff seeks (a) a declaratory judgment that the Defendants' conduct violates

12   RESPA, Cal. Ins. Code Section 12760, and/or California Bus. & Prof. Code Section 17200 et seq.

13   and (b) an injunction that bars the Defendants from further violating such laws.

14                          **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiff demands judgment against Defendants as follows:

16       A.      A declaration that this action is a proper class action under Federal Rule of Civil

17             Procedure 23 on behalf of the RESPA Class and the California UCL Class, as defined

18             herein, and an order directing that reasonable notice of this action be given to each

19             member of the RESPA Class and California UCL Class;

20       B.      A declaratory judgment that the Defendants' conduct alleged herein constitutes a

21             violation of RESPA and Regulation X, a violation of Cal. Ins. Code Section 12760,

22             and a violation of the Business & Professions Code § 17200;

23       C.      An injunction enjoining, preliminarily and permanently, Defendants from continuing

24             the unlawful conduct alleged herein;

25       D.      For restitution to Plaintiff and each member of the RESPA Class, and California UCL

26             Class, as his or her interest may appear, of all sums unlawfully collected by

27             Defendant from the Plaintiff and other members of the RESPA Class and California

28             UCL Class during the RESPA Class Period and California UCL Class Period;

1    E.    For treble damages for the RESPA violations;

2    F.    An award for Plaintiff and the RESPA Class and California UCL Class for the costs

3          of this suit (including expert fees), and reasonable attorneys' fees, as provided by law;

4          and

5    G.    An award for such other and further relief as the nature of this case may require or as

6          this court deems just, equitable, and proper.

7                                    **JURY DEMAND**

8    Plaintiff demands a jury trial of all triable issues.

9

10   DATED: January 27, 2012                    CHAPIN FITZGERALD
                                                SULLIVAN & BOTTINI, LLP
11

12                                              FRANCIS A. BOTTINI, JR.

13
                                                Edward D. Chapin, Esq. (SBN: 053287)
14                                              Francis A. Bottini, Esq. (SBN: 175783)
                                                Jill S. Sullivan, Esq. (SBN: 185757)
15                                              Keith M. Cochran, Esq. (SBN: 254346)
                                                550 West "C" Street, Suite 2000
16                                              San Diego, California 92101
                                                Tel:  (619) 241-4810
17                                              Fax:  (619) 955-5318

18
                                                Counsel for Plaintiff
19

20

21

22

23

24

25

26

27

28

                                      -25-
                            CLASS ACTION COMPLAINT

# EXHIBIT 1

Dated: June 16, 2010.
**Deborah S. Merkle,**
*Chairman.*
[FR Doc. 2010–15317 Filed 6–24–10; 8:45 am]
**BILLING CODE P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**24 CFR Part 3500**

**[Docket No. FR–5425–IA–01]**

**Real Estate Settlement Procedures Act (RESPA): Home Warranty Companies' Payments to Real Estate Brokers and Agents**

**AGENCY:** Office of General Counsel, HUD.

**ACTION:** Interpretive rule.

**SUMMARY:** Under section 8 of RESPA and HUD's implementing RESPA regulations, services performed by real estate brokers and agents as additional settlement services in a real estate transaction are compensable if the services are actual, necessary and distinct from the primary services provided by the real estate broker or agent, the services are not nominal, and the payment is not a duplicative charge. A referral is not a compensable service for which a broker or agent may receive compensation. This rule interprets section 8 of RESPA and HUD's regulations as they apply to the compensation provided by home warranty companies to real estate brokers and agents. Although interpretive rules are exempt from public comment under the Administrative Procedure Act, HUD nevertheless welcomes public comment on this interpretation.

**DATES:** *Effective date:* June 25, 2010. *Comment Due Date:* July 26, 2010.

**ADDRESSES:** Interested persons are invited to submit comments regarding this interpretive rule to the Regulations Division, Office of General Counsel, 451 7th Street, SW., Room 10276, Department of Housing and Urban Development, Washington, DC 20410–0500. Communications must refer to the above docket number and title. There are two methods for submitting public comments. All submissions must refer to the above docket number and title.

1. *Submission of Comments by Mail.* Comments may be submitted by mail to the Regulations Division, Office of General Counsel, Department of Housing and Urban Development, 451 7th Street, SW., Room 10276, Washington, DC 20410–0500.

2. *Electronic Submission of Comments.* Interested persons may

submit comments electronically through the Federal eRulemaking Portal at *www.regulations.gov.* HUD strongly encourages commenters to submit comments electronically. Electronic submission of comments allows the commenter maximum time to prepare and submit a comment, ensures timely receipt by HUD, and enables HUD to make them immediately available to the public. Comments submitted electronically through the *www.regulations.gov* Web site can be viewed by other commenters and interested members of the public. Commenters should follow the instructions provided on that site to submit comments electronically.

Note: To receive consideration as public comments, comments must be submitted through one of the two methods specified above. Again, all submissions must refer to the docket number and title of the rule

*No Facsimile Comments.* Facsimile (FAX) comments are not acceptable.

Public Inspection of Public Comments. All properly submitted comments and communications submitted to HUD will be available for public inspection and copying between 8 a.m. and 5 p.m. weekdays at the above address. Due to security measures at the HUD Headquarters building, an advance appointment to review the public comments must be scheduled by calling the Regulations Division at 202–708–3055 (this is not a toll-free number). Individuals with speech or hearing impairments may access this number through TTY by calling the toll-free Federal Information Relay Service at 800–877–8339. Copies of all comments submitted are available for inspection and downloading at *http://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For legal questions, contact Paul S. Ceja, Assistant General Counsel for RESPA/SAFE, telephone number 202–708–3137; or Peter S. Race, Assistant General Counsel for Compliance, telephone number 202–708–2350; Department of Housing and Urban Development, 451 7th Street, SW., Room 9262, Washington, DC 20410. For other questions, contact Barton Shapiro, Director, or Mary Jo Sullivan, Deputy Director, Office of RESPA and Interstate Land Sales, Office of Housing, Department of Housing and Urban Development, 451 7th Street, SW., Room 9158, Washington, DC 20410; telephone number 202–708–0502. These telephone numbers are not toll-free. Persons with hearing or speech impairments may access this number via TTY by calling the toll-free Federal

Information Relay Service at 1–800–877–8339.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

A homeowner's warranty is covered as a "settlement service" under HUD's RESPA regulations at 24 CFR 3500.2. Accordingly, the framework for compensation of real estate brokers and agents for services performed on behalf of home warranty companies (HWCs) is established in RESPA and HUD's regulations, as discussed in an unofficial staff interpretation letter dated February 21, 2008, issued by the Office of General Counsel. In brief, services performed by real estate brokers and agents on behalf of HWCs are compensable as additional settlement services if the services are actual, necessary and distinct from the primary services provided by the real estate broker or agent. (*See* 24 CFR 3500.14(g)(3).) The real estate broker or agent may accept a portion of the charge for the homeowner warranty only if the broker or agent provides services that are not nominal and for which there is not a duplicative charge. (*See* 24 CFR 3500.14(c).)

HUD has received inquiries regarding the application of this framework to the compensation provided by HWCs to real estate brokers and agents for the selling of home warranties in connection with the sale or purchase of a home. In particular, interested parties have inquired about the legality of the HWCs providing compensation to real estate brokers and agents on a per transaction basis and about the scope of services provided on behalf of the HWC for which real estate brokers and agents can be compensated by the HWC.

**II. This Interpretive Rule**

This interpretive rule clarifies the legality under section 8 of RESPA and HUD's implementing regulations of the compensation provided by HWCs to real estate brokers and agents, and it is provided in accordance with Secretary of HUD's delegation of authority to the General Counsel to interpret the authority of the Secretary. (*See* 74 FR 62801, at 62802.)

*A. Unlawful Compensation for Referrals*

RESPA does not prohibit a real estate broker or agent from referring business to an HWC. Rather, RESPA prohibits a real estate broker or agent from receiving a fee for such a referral, as a referral is not a compensable service. (*See* 24 CFR 3500.14(b).) HUD's regulations, at 24 CFR 3500.14(f), defines referral, in relevant part, as follows:

A referral includes any oral or written action directed to a person which has the effect of *affirmatively influencing the selection by any person of a provider of a settlement service* or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business. (Emphasis added.)

To evaluate whether a payment from an HWC is an unlawful kickback for a referral, HUD may look in the first instance to whether, among other things:

• The compensation for the HWC services provided by the real estate broker or agent is contingent on an arrangement that prohibits the real estate broker or agent from performing services for other HWC companies; *e.g.* if a real estate broker or agent is compensated for performing HWC services for only one company, this is evidence that the compensation may be contingent on such an arrangements; and

• Payments to real estate brokers or agents by the HWC are based on, or adjusted in future agreements according to, the number of transactions referred.

If it is subsequently determined, however, that the payment at issue is for only compensable services,[1] the existence of such arrangements and agreements would not be an indicator of an unlawful referral arrangement, and would be permissible. (*See* discussion in Sections C and D below.)

### B. Marketing by a Real Estate Broker or Agent Directed to Particular Homebuyers or Sellers

In some circumstances, marketing services performed on behalf of an HWC are not compensable services. In particular, a real estate broker or agent is in a unique position to refer settlement service business and through marketing can affirmatively influence a homebuyer's or seller's selection of an HWC. As a real estate broker and agent hold positions of influence in the real estate transaction, a homebuyer or seller is more likely to accept the broker's or agent's promotion or recommendation of a settlement service provider. Therefore, marketing performed by a real estate broker or agent on behalf of an HWC to sell a homeowner warranty to particular homebuyers or sellers is a "referral" to a settlement service provider.

Accordingly, in a transaction involving a federally related mortgage loan, an HWC's compensation of a real estate broker or agent for marketing services that are directed to particular homebuyers or sellers would be a payment that violates section 8 of RESPA as an illegal kickback for a referral of settlement service business. For example, a real estate broker or agent actively promoting an HWC and its products to sellers or prospective homebuyers by providing HWC verbal "sales pitches" about the benefits of a particular HWC product or by distributing the HWC's promotional material at the broker's or agent's office or at an open house is considered to be a referral. Thus, compensating the real estate broker or agent for such promotion would result in a violation of section 8 of RESPA.

Nothing precludes a real estate broker or agent from performing services to aid the seller or buyer, or to increase the possibility that the real estate transaction will occur and thereby benefit the broker or agent. However, the broker or agent may not be compensated by the HWC for marketing services directed to particular homebuyers or sellers.

### C. Bona Fide Compensation for Services Performed

Section 8(c) of RESPA and HUD's regulations allow payment of bona fide compensation for services actually performed. (*See* 24 CFR 3500.14(g)(1)(iv).) HUD's regulations also allow persons in a position to refer settlement service business to receive payments for providing additional compensable services as part of a transaction. (*See* 24 CFR 3500.14(g)(3).) Services performed by real estate brokers and agents on behalf of HWCs would be compensable as additional settlement services only if the services are actual, necessary and distinct from the primary services provided by the real estate broker or agent. Further, the real estate broker or agent may accept, and an HWC may pay to the broker or agent, a portion of the charge for the homeowner warranty only for services that are not nominal and for which there is not a duplicative charge. (*See* 24 CFR 3500.14(c).) HUD looks at the actual services provided to determine in a particular case whether compensable services have been performed by the real estate broker or agent.[2]

A determination that compensable services have been performed by the real estate broker or agent will be based on a review of the particular facts of each case. Evidence in support of such a determination may include:

• Services—other than referrals—to be performed are specified in a contract between the HWC and the real estate broker or agent, and the real estate broker or agent has documented the services provided to the HWC;

• The services actually performed are not duplicative of those typically provided by a real estate broker or agent;

• The real estate broker or agent is by contract the legal agent of the HWC, and the HWC assumes responsibility for any representations made by the broker or agent about the warranty product; and

• The real estate broker or agent has fully disclosed to the consumer the compensable services that will be provided and the compensation arrangement with the HWC, and has made clear that the consumer may purchase a home warranty from other vendors or may choose not to purchase any home warranty.

HUD will review evidence on a case-by-case basis to determine whether compensation provided was a kickback for a referral or a legal payment for the compensable services. If it is factually determined that only actual compensable services have been performed by a real estate broker or agent in a transaction, it follows that transaction-based compensation of that broker or agent that is reasonable would not be an indicator of an unlawful referral arrangement and would be permissible.

### Reasonableness of Compensation

As the final step in assessing the legality of the compensation for these services, HUD will also assess whether the value of the payment by the HWC is reasonably related to the value of the services actually performed by the real estate broker or agent. In the context of loan origination, for example, HUD has stated that the mere taking of an application is not sufficient work to justify a fee under RESPA. In its Statement of Policy 1999–1, entitled "Regarding Lender Payments to Mortgage Brokers" (64 FR 10080, March 1, 1999), HUD stated:

Although RESPA is not a rate-making statute, HUD is authorized to ensure that payments from lenders to mortgage brokers are reasonably related to the value of the goods or facilities actually furnished or services actually performed, and are not

---

[1] Compensable services are services that are actual, necessary and distinct from the primary services provided by the real estate broker or agent, that are not nominal, and for which duplicative fees are not charged.

[2] For example, conducting actual inspections of the items to be covered by the warranty to identify pre-existing conditions that could affect home warranty coverage, recording serial numbers of the items to be covered, documenting the condition of the covered items by taking pictures and reporting

to the HWC regarding inspections may be compensable services.

compensation for the referrals of business, splits of fees or unearned fees.

In analyzing whether a particular payment or fee bears a reasonable relationship to the value of the goods or facilities actually furnished or services actually performed, HUD believes that payments must be commensurate with that amount normally charged for similar services, goods or facilities * * *. If the payment or a portion thereof bears no reasonable relationship to the market value of the goods, facilities or services provided, the excess over the market rate may be used as evidence of a compensated referral or an unearned fee in violation of Section 8(a) or (b) of RESPA. (*See* 24 CFR 3500.14(g)(2).) Moreover, HUD also believes that the market price used to determine whether a particular payment meets the reasonableness test may not include a referral fee or unearned fee, because such fees are prohibited by RESPA. Congress was clear that for payments to be legal under Section 8, they must bear a reasonable relationship to the value received by the person or company making the payment. (S. Rep. 93–866, at 6551.) 64 FR 10086.

*D. Conclusion*

Accordingly, HUD interprets section 8 of RESPA and HUD's regulations as these authorities apply to the compensation provided by home warranty companies to real estate brokers and agents as follows:

(1) A payment by an HWC for marketing services performed by real estate brokers or agents on behalf of the HWC that are directed to particular homebuyers or sellers is an illegal kickback for a referral under section 8;

(2) Depending upon the facts of a particular case, an HWC may compensate a real estate broker or agent for services when those services are actual, necessary and distinct from the primary services provided by the real estate broker or agent, and when those additional services are not nominal and are not services for which there is a duplicative charge; and

(3) The amount of compensation from the HWC that is permitted under section 8 for such additional services must be reasonably related to the value of those services and not include compensation for referrals of business.

*F. Solicitation of Comment*

This interpretive rule represents HUD's interpretation of its existing regulations and is exempt from the notice and comment requirements of the Administrative Procedure Act. (*See* 5 USC 553(b)(3)(A)). Nevertheless, HUD is interested in receiving feedback from the public on this interpretation, specifically with respect to clarity and scope.

Dated: June 18, 2010.

**Helen R. Kanovsky,**
*General Counsel.*
[FR Doc. 2010–15355 Filed 6–24–10; 8:45 am]
**BILLING CODE 4210–67–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Coast Guard**

**33 CFR Parts 1, 3, 8, 13, 19, 23, 25, 26, 27, 51, 67, 81, 84, 89, 96, 101, 104, 105, 110, 114, 116, 118, 120, 126, 127, 128, 135, 140, 141, 144, 148, 149, 150, 151, 153, 154, 155, 156, 157, 158, 159, 160, 164, 165, 167, 169, 174, 179, 181, and 183**

[Docket No. USCG–2010–0351]

**RIN 1625–ZA25**

**Navigation and Navigable Waters; Technical, Organizational, and Conforming Amendments**

**AGENCY:** Coast Guard, DHS.
**ACTION:** Final rule.

**SUMMARY:** This rule makes non-substantive changes throughout Title 33 of the Code of Federal Regulations. The purpose of this rule is to make conforming amendments and technical corrections to Coast Guard navigation and navigable waters regulations. This rule will have no substantive effect on the regulated public. These changes are provided to coincide with the annual recodification of Title 33 every July 1.
**DATES:** This final rule is effective June 25, 2010.

**ADDRESSES:** Comments and material received from the public, as well as documents mentioned in this preamble as being available in the docket, are part of docket USCG–2010–0351 and are available for inspection or copying at the Docket Management Facility (M–30), U.S. Department of Transportation, West Building Ground Floor, Room W12–140, 1200 New Jersey Avenue, SE., Washington, DC 20590, between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. You may also find this docket on the Internet by going to *http://www.regulations.gov*, inserting USCG–2010–0351 in the "Keyword" box, and then clicking "Search."
**FOR FURTHER INFORMATION CONTACT:** If you have questions on this rule, call or e-mail Diane LaCumsky, Coast Guard; telephone 202–372–1025, e-mail *Diane.M.LaCumsky@uscg.mil*. If you have questions on viewing the docket, call Renee V. Wright, Program Manager, Docket Operations, telephone 202–366–9826.

**SUPPLEMENTARY INFORMATION:**

**Table of Contents for Preamble**

I. Regulatory History
II. Background
III. Discussion of Rule
IV. Regulatory Analyses
  A. Regulatory Planning and Review
  B. Small Entities
  C. Collection of Information
  D. Federalism
  E. Unfunded Mandates Reform Act
  F. Taking of Private Property
  G. Civil Justice Reform
  H. Protection of Children
  I. Indian Tribal Governments
  J. Energy Effects
  K. Technical Standards
  L. Environment

**I. Regulatory History**

We did not publish a notice of proposed rulemaking (NPRM) for this rule. Under 5 U.S.C. 553(b)(3)(A), the Coast Guard finds this rule is exempt from notice and comment rulemaking requirements because these changes involve rules of agency organization, procedure, or practice. In addition, the Coast Guard finds notice and comment procedure are unnecessary under 5 U.S.C. 553 (b)(3)(B) as this rule consists only of corrections and editorial, organizational, and conforming amendments and these changes will have no substantive effect on the public. This rulemaking also implements the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, by revising the Penalty Adjustment Table published in 33 CFR 27.3. This revision reflects statutorily prescribed adjustments of civil monetary penalties (CMP) for 2010. These statutes do not allow for discretion in implementation, rendering prior notice and comment unnecessary and contrary to the public interest.

Under 5 U.S.C. 553(d)(3), the Coast Guard finds that, for the same reasons, good cause exists for making this rule effective upon publication in the **Federal Register.**

**II. Background**

Each year the printed edition of Title 33 of the Code of Federal Regulations is recodified on July 1. This rule, which becomes effective June 25, 2010, makes technical and editorial corrections throughout Title 33 in time to be reflected in the recodification. This rule does not create any substantive requirements.

**III. Discussion of Rule**

This rule amends 33 CFR Part 1 by adding a new paragraph to clarify the Coast Guard's District Commanders' authority to redelegate signature of

# EXHIBIT 2

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

### 24 CFR Part 3500

### [Docket No. FR–5425–IA–02]

### Real Estate Settlement Procedures Act (RESPA): Home Warranty Companies' Payments to Real Estate Brokers and Agents Interpretive Rule: Response to Public Comments

**AGENCY:** Office of General Counsel, HUD.

**ACTION:** Interpretive Rule; Response to Public Comments.

**SUMMARY:** On June 25, 2010, HUD issued a rule interpreting certain provisions of RESPA as applied to the payment of fees to real estate brokers and agents by home warranty companies. The public was invited to comment on the interpretive rule. After reviewing and considering the comments, HUD determined that changes are not needed to the interpretive rule. Through this document, HUD responds to certain questions raised in the comments. HUD believes that its response to these questions serves to provide additional guidance relating to matters covered in the interpretive rule and the comments.

**FOR FURTHER INFORMATION CONTACT:** For legal questions, contact Paul S. Ceja, Assistant General Counsel for RESPA/SAFE, telephone number 202-708-3137; or Peter S. Race, Assistant General Counsel for Compliance, telephone number 202-708-2350; Department of Housing and Urban Development, 451 7th Street, SW, Room 9262, Washington, DC 20410. For other questions, contact Barton Shapiro, Director, or Mary Jo Sullivan, Deputy Director, Office of RESPA and Interstate Land Sales, Office of Housing, Department of Housing and Urban Development, 451 7th Street, SW, Room 9158, Washington, DC 20410; telephone number 202–708–0502. These telephone numbers are not toll-free. Persons with hearing or speech

impairments may access these numbers via TTY by calling the toll-free Federal Information
Relay Service at 1-800-877-8339.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The requirements and prohibitions under RESPA apply to residential real estate
transactions that include a federally related mortgage loan. Section 8 of RESPA prohibits giving
and receiving "kickbacks" for the referral of real estate settlement services, and unearned fees,
involving real estate transactions. Since 1992, HUD's RESPA regulations have defined
"settlement service" to include "homeowner's warranties". 24 CFR 3500.2(11). While a referral
of settlement services is not compensable under RESPA, a real estate broker or agent (or other
person in a position to refer settlement service business) may be compensated for services that
are actual, necessary and distinct from the primary services provided by the real estate broker or
agent, if the services are not nominal, and the payment is not a duplicative charge. (See 24 CFR
3500.14(b), (c), (g)(1), and (g)(3)).

On June 25, 2010 (75 FR 36271), HUD issued an interpretive rule on the propriety under
Section 8 of RESPA (12 U.S.C. § 2607) of payments to real estate brokers and agents from home
warranty companies (HWCs). The interpretive rule concluded:

(1) A payment by an HWC for marketing services performed by real estate brokers or
agents on behalf of the HWC that are directed to particular homebuyers or sellers is an
illegal kickback for a referral under section 8;

(2) Depending upon the facts of a particular case, an HWC may compensate a real estate
broker or agent for services when those services are actual, necessary and distinct from
the primary services provided by the real estate broker or agent, and when those

additional services are not nominal and are not services for which there is a duplicative charge; and

(3) The amount of compensation from the HWC that is permitted under section 8 for such additional services must be reasonably related to the value of those services and not include compensation for referrals of business.

75 FR at 36273.

HUD received 72 comments in response to publication of the interpretive rule. HUD reviewed all of the comments, and appreciates the input and information provided by the commenters. Some commenters supported the interpretive rule and others did not. HUD found that the comments that were not supportive of its interpretation did not present concerns or information that warrant any changes to the interpretive rule. HUD, however, has identified and is responding to seven specific questions to provide additional guidance relating to matters covered in the interpretive rule and the comments.

## II. Questions and Responses

1. Question: Is a home warranty company's flat fee payment (e.g., monthly or annual payment) to a real estate broker or agent for marketing a home warranty product directly to particular homebuyers or sellers a permissible payment under section 8 of RESPA?

HUD Response: No, as provided in the interpretive rule, payments for marketing services directed to particular homebuyers or sellers are considered to be payments for affirmatively influencing their choice of settlement service providers and would therefore violate section 8 of RESPA as an illegal kickback for a referral, regardless of whether the payment is made to the broker or agent on a "per transaction" or a "flat fee" basis.

2. <u>Question</u>: Is the list of items in footnote 2 of the interpretive rule an exhaustive list of the services that a real estate broker or agent can be legally compensated for by a home warranty company under section 8 of RESPA?

<u>HUD Response</u>: No, the footnote itself begins with the introduction, "For example". The list in the footnote is not exhaustive but exemplary of services that, in a particular case, may be compensable. However, as discussed in the interpretive rule, to be compensable the services must be services that are "actual, necessary and distinct from the primary services provided by the real estate broker or agent, that are not nominal, and for which duplicative fees are not charged" (see fn.1 of the interpretive rule). Referrals of settlement service business are not compensable services. Therefore, payments made for "services" that were fabricated to disguise a payment to a real estate broker or agent for referrals and are not, in fact, "necessary" would be illegal under section 8 of RESPA.

3. <u>Question</u>: What is meant by the statement in the interpretive rule that evidence in support of a determination that compensable services have been performed by a real estate broker or agent may include: "The real estate broker or agent is by contract the legal agent of the HWC, and the HWC assumes responsibility for any representations made by the broker or agent about the warranty product."

<u>HUD Response</u>: While not conclusive, the fact that a home warranty company is willing to be legally committed by the work and representations of a real estate broker or agent who is compensated by the HWC for performing services is one indicator that those services provided are "actual, necessary and distinct" and not nominal—i.e., that actual work is being performed by the real estate broker or agent for which the home warranty company is willing to assume liability. Specifically, such a legal relationship indicates that the HWC has worked with the real

estate broker or agent closely enough to understand the value of the services performed by the broker or agent, and to be confident enough of the broker's or agent's services and representations, that the HWC is willing to take responsibility for those services and representations. Conversely however, if in a contract with a consumer, for example, the HWC disclaims liability for acts and representations of the real estate broker or agent in connection with the home warranty, this may indicate that no actual services of value have been performed by the real estate broker or agent.

4. Question: Why is it a relevant factor in analyzing a potential section 8 violation that a home warranty company's payment to a real estate broker or agent was made under an exclusive-representation arrangement?

HUD Response: Section 8 of RESPA prohibits payments for referrals and unearned fees. Stated another way, referrals are not compensable services under section 8. See 24 CFR 3500.14(b). HUD's interpretive rule states that, in initially evaluating whether a payment from an HWC to a real estate broker or agent is a violation of section 8, HUD may look at whether the payment is tied to an arrangement that prohibits the broker or agent from receiving from a competitor comparable payment for comparable actual services. In other words, such an exclusive-representation arrangement between the HWC and the real estate broker or agent is evidence of an unlawful-payment-for-referral arrangement whereby the real estate broker or agent is only being paid for steering customers exclusively to the HWC and its products. However, as it is further noted in the interpretive rule, if it is determined that the HWC's payment is only for compensable services, the existence of an exclusive-representation arrangement would be permissible under section 8.

5. Question: Does the interpretive rule prohibit payments from an HWC to real estate brokers or agents for general advertising services performed by the brokers or agents on behalf of the HWC?

HUD Response: No. The interpretive rule specifically prohibits compensation for marketing performed by a real estate broker or agent on behalf of an HWC when the marketing is directed to selling the HWC's home warranty product to particular homebuyers or sellers. HUD would evaluate the permissibility of compensation provided by an HWC to real estate brokers or agents for other advertising by applying the definition of "referral" in § 3500.14(f) of HUD's RESPA regulations. For example, a reasonable payment for an advertisement by an HWC in a real estate broker's or agent's publication or on the broker's or agent's website would not, in and of itself, be a payment for a referral under RESPA. If the marketing services for which the HWC is paying the real estate broker or agent are services directed to a homebuyer or seller that have the effect of "affirmatively influencing" the selection by the homebuyer or seller of the HWC's home warranty product in connection with the real estate settlement, then those marketing services would be subject to RESPA's prohibitions on referral payments.

6. Question: Is a home warranty always considered to be a "settlement service" for purposes of RESPA coverage?

HUD Response: No. RESPA's kickback and referral fee prohibitions are applicable in the context of "settlement services", a term that is defined broadly under RESPA and HUD's RESPA regulations. RESPA defines "settlement services" to include "any service provided in connection with a real estate settlement" and provides a nonexclusive listing of such services (12 U.S.C. § 2602(3)). In its regulations HUD has long defined "settlement service" to include "any service provided in connection with a prospective or actual settlement..." (24 CFR 3500.2). As

noted above and in the interpretive rule, "homeowner's warranties" have been specifically included in HUD's definition of "settlement service" since 1992 (24 CFR 3500.2(11)). Therefore, when a home warranty is "provided in connection with a prospective or actual settlement", it is a "settlement service" under HUD's regulatory interpretation of RESPA.

In determining whether services involving a home warranty are provided in connection with a prospective or actual settlement, HUD would consider, among other things: (i) whether the charge for the home warranty is paid out of the proceeds at the settlement; and (ii) if the charge is not paid at settlement, whether the timing of the purchase of and payment for the home warranty indicates that the purchase is so removed from the settlement that it is not provided "in connection with" a settlement within the meaning of RESPA and HUD's regulations. Items paid in connection with a RESPA-covered transaction, of course, may be paid and disclosed on the HUD-1/1A settlement statement as paid outside of closing (P.O.C.) or through the accounting at settlement.

7. Question: Does the interpretive rule apply to situations beyond home warranty company payments to real estate brokers and agents, for example to payments by other settlement service providers to real estate brokers and agents?

HUD Response: The interpretive rule is specifically directed to home warranty company payments to real estate brokers and agents. However, the analysis in the interpretive rule is based on an interpretation of the RESPA statute and HUD's existing regulations, which analysis may be applicable to payments made by other settlement service providers to real estate brokers or agents.

### III. Confirmation of June 25, 2010, Interpretive Rule

Again, HUD appreciates the input and information provided by the members of the public and representatives of industry who responded to HUD's solicitation of public comment on the June 25, 2010, interpretive rule. After consideration of the comments, HUD confirms its June 25, 2010, interpretation of certain provisions of RESPA as applied to the payment of fees to real estate brokers and agents by home warranty companies. The interpretive rule therefore stands without change.

Finally, some commenters asked whether the interpretive rule has prospective or retroactive effect. An interpretive rule does not change existing law. As noted in the concluding paragraph of the rule, the interpretive rule represents HUD's interpretation of its existing regulations. This interpretive rule, therefore, does not constitute a change in HUD's interpretation of RESPA or the RESPA regulations, but is an articulation of HUD's interpretation of RESPA and the implementing regulations that specifically applies to home warranty company payments to real estate brokers and agents.

Authority: 12 USC 2601-2617; 42 USC 3535(d).

Dated: ___November 23, 2010___

Helen R. Kanovsky, General Counsel